## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION



FILED

NOV 3 0 2018

CLERK, US DISTRICT COURT
NORFOLK, VA

**Gina and Gerod Stukes, Sr.( Parents by
association with B.S. 1,' and B.S. 2, two minors)'
disabilities,
Plaintiffs(Pro se litigants),**

**v.**

**CIVIL ACTION NO:** _2:18cv644_
**JURY TRIAL DEMANDED**

**School Board of the City of Virginia Beach,
Marcari, Russotto, Spencer, & Balaban, P.C.
("the Law Firm") in it's Official Capacity as the
Defendants.**

### COMPLAINT

Comes now, plaintiffs, Gina and Gerod Stukes, Sr. as also parents by association

with B.S. 1,' and B.S. 2(two minors)' disabilities, for cause against Defendants to

assert pursuant to the Rules of this Court, the laws of the United States of which

includes Titles 18 U.S.C. § 241, 42 U.S.C. §§ 1986, 1981, and 1983, and the laws

of Virginia, in addition to case number 2:17-cv-00489-AWA-RJK, from the United

States District Court for the Eastern District of Virginia, Norfolk Division, and

case number 18-2042 from the United States Court of Appeals for the Fourth

Circuit, that had culminated subsequent to the filing of OCR Complaint No. 11-18-

1408, being submitted by the parents that was timely sent for processing to OCR

by 04/16/18, prompting Defendant while having had ample opportunity to respond

as with formulation of an OCR Resolution Agreement on October 12, 2018, with

regards to the "incidents [complained of] by parents that occurred on November 30th, December 4th, 6th, and 8th," during 2017, that all appears to have compelled activation for this current legal matter to allege violations of IEP/Section 504 of the Rehabilitation Act of 1973 and its implementing regulation at 34 C.F.R. Part 104, and Title II of the American Disabilities Act of 1990( Title II), with an implementing regulation of 28 C.F.R. Part 35, of which Defendants had also simultaneously progressed with sustained retaliation, malice, and indifference to perniciously engage for erection and subjection of Plaintiffs by association with both sons' disabilities to a *"hostile existence"* that has stemmed from both sons hostile learning environments as incubated with precise flagrant unwelcomed intimidations and harassments causing disparate treatments as directly exacted against both sons' ADHD/ADD disabilities for seeking to rely on engaging in protected activity as all presumed or lead to believe that Plaintiffs by association with B.S. 1 and B.S. 2("both sons") could reasonably expect both sons to be able to apply without experiencing discrimination and/or retaliation from Defendants, contrary to being able to enjoy entitled educational rights for unfettered access to a "free appropriate public education."

1). Defendants' have engaged in sustained deliberate failures to protect, execute, and enforce Defendants' policies, practices and procedures about IEP/Section 504, and Title II of ADA towards even Plaintiffs by association with both sons

while appearing to petition the "School Board" first during litigation(case number 2:17-cv-00489, and case number 18-2042), and secondly, the same School Board regarding the same perceivable violations that had erupted on November 30, 2017, December 4, 2017, December 6, 2017, and December 8, 2017, while Plaintiffs were under the impression that the School Board was executing the FAPE to accommodate Plaintiffs' sons that also later resulted in a questionable or suspiciously inadequate investigative process, appearing as flagrantly induced to further subject Plaintiffs by association with both sons to a non-investigative state and federally unregulated unequal educational importunity, as all deviated from again Defendants' desire to deliberately engage in failed executions of administrative policies, that became consummated with publicized *verbal assaults* while depriving Plaintiffs by association with sons of known contractual and constitutional rights to exercise First, Fifth, and Fourteenth Amendment protected activities as entitled and further explained below and as guided by the following:

## THE FEDERAL QUESTION

2).   Whether Plaintiffs' by association with both sons' disabilities were lawfully accorded and/or afforded from the Defendants with sufficient protections, executions, and enforcements for equal access to the services entitled or related to "Free Appropriate Public Education" under the Individualized Education Program, § 504 of the Rehabilitation Act of 1973, and Title II of the American Disabilities

Act of 1990 in order for the Plaintiffs as associated with both sons' disabilities to avoid a hostile existence as derived from Defendants' conduct?

## JURISDICTION AND VENUE

3). Plaintiffs(Gina and Gerod Stukes), as associated with both sons disabilities, brings this action under the Individualized Education Program, Section 504 of the Rehabilitation Act of 1973, as amended at 29 U.S.C. § 794 (the "Rehabilitation Act"); American with Disabilities Act, 42 U.S.C. §12131, et. seq., ("ADA"); Titles 18 U.S.C. § 241, 42 U.S.C. §§ 1986, 1981, and 1983; and the Virginians with Disabilities Act VA Code Annotated, § 51.5-40 et seq.

4). This court has jurisdiction pursuant to the following statutes:

a). 28 U.S.C. §1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States;

b). 28 U.S.C. §1343 (3) and (4), which gives district courts jurisdiction over actions to secure civil rights extended by the United States government;

c). 28 U.S.C. §1367, which gives the district court supplemental jurisdiction over state law claims.

5). Venue is appropriate in this judicial district under 28 U.S.C. §1391 (b) because the events that gave rise to this Complaint occurred in this district.

## BACKGROUND

6).   After December 6, 2017, the parents by association with both sons' disabilities

were informed as initiated by B.S. 2 that the Defendant had subjected B.S. 2 to a

hostile [learning] environment based on disability when the B.S. social studies

teacher(Ms. Ward) said to B.S. 2 "is your brain so small that you can't remember

instructions.......I bet a lot of the class has ADD"

7).   B.S. 2 was enrolled as an seventh grader at Larkspur Middle School during the

2017-2018, school year while having an Individualized Education Program (IEP)

and had a diagnosis of attention deficit disorder(ADD).  On Thursday, December

7, 2017, B.S .2 reported to Larkspur Middle School an incident that occurred with

B.S.2 social studies teacher on Wednesday December 6, 2017,and the School

contacted the B.S. 2 parents to inform Gina and Gerod Stukes about the incident.

8).   On Monday December 18, 2017, School Administrators, B.S. 2 teachers, case

manager, and guidance counselor met with B.S. 2 and Gina Stukes to discuss the

incident and other matters.  On February 2, 2018, the IEP team met.  Currently,

B.S. 2 is enrolled in a different school division.

9).   On  August 15, 2018, the Plaintiffs by association with both sons' disabilities

had learned from attorney David J. Allmond, Esq., with Va. State Bar No. 32649),

at the office of Marcari, Russotto, Spencer, & Balaban, P.C. , 501 Baylor Court,

Chesapeake, VA 23320; that case number: 2:17-cv-00489-AWA-RJK, from the

United States District Court for the Eastern District of Virginia, Norfolk Division, had granted Summary Judgment to the School Board on August 2, 2018, and that the Defendant(Law firm) had no intention whatsoever to pursue an appeal, nor made any further recommendations or even provided clarification as to why. At no time did the Law firm file an OCR Complaint or an Extension of Time to Obtain Counsel, nor for Appointment of Counsel on behalf B.S. 1 of prior to abandoning the case during the appealable period subsequent to August 2, 2018.

10). After October 12, 2018, Plaintiffs by association with both sons' disabilities had learned that the Defendant had entered into a Resolution Agreement concerning the youngest son's(B.S. 2) Complaint to OCR.

11). As a result of the District Court's decision on August 2, 2018, that left the parents on behalf of B.S. 1 without representation for appeal, the parents were forced out of the *laws of necessity* to submit the appeal to the Fourth Circuit(case number 18-2042 ), that consummated for affirmation(November 15, 2018) of the District Court of which has caused Plaintiffs by association with the older son and now both sons' disabilities to be left boxed in a hostile judicial environment that has stemmed from and remains in perpetuation of section 504 and Title II of ADA violations birthed from a breach of Defendants' implementation of "FAPE."

12). Both Defendants either knew or should have known all incidents in question regarding this instant case are sufficiently severe and pervasive as created and

sustained from the same "School Board's" hostile [learning] environments of

which is a form of discrimination prohibited by section 504 and Title II of ADA.

13). But instead, Plaintiffs by association with both sons' disabilities were again

caused to be subjected to denials as a direct result of Defendants' indifference that

appears also coupled with harassment, intimidation, and retaliation because the

effect of Defendants' conduct had again became sufficiently severe or pervasive as

to interfere with or limit Plaintiffs' ability to assist B.S. 2 with the investigation

in order to participate in or benefit from the Defendant's programs, activities, or

services as related to FAPE in further violation of § IEP/504, and Title II of ADA

protections; and obstructed Plaintiffs by association of both sons' disabilities to

protect, assist, and to acquire access of FAPE as applied executively and judicially

thus perpetuating Plaintiffs by association with both sons' disabilities to a

sustained hostile existence that also appears to have harmed the family's existence.

### The Collective Judicial Climate and Landscape of the School Board as influenced by the City of Virginia Beach.

14). From the dismissed case that was highly publicized statewide, nationally, and

internationally Court Order for case(No.: 2:17cv489) as it appears as a direct result

of a deliberate failure to enforce as affirmed with poor representation(attorney

David J. Allmond, Esq. Va. State Bar No. 32649), of Marcari, Russotto, Spencer,

& Balaban, P.C. , 501 Baylor Court, Chesapeake, VA 23320; 757-963-2800

(phone), and 757-963-0750 (Facsimile) for the first son, B.S. 1, who had known disability and 504 Plan(April 22, 2016). On September 16, 2016, the Math teacher(Mr. Board) was not limited to just writing the word "FOCUS" on Bryan's forehead with a dry erase marker, and taking a photograph so Plaintiff could see what it looked like. This had caused the School Board administrators to place Mr. Board on administrative leave on September 28, 2016, and later being found guilty of simple Assault and Battery on or around January 24, 2017, of which was published in "The Virginian Pilot."

15). EEOC charge(No. 437-2017-6505) of which was timely submitted for processing to the EEOC by 04/14/17, and after 04/14/17, for the time it took for Defendant to respond to the EEOC's Request for Information and then up to ten days for Plaintiff's review(of RFI) to respond back in Writing(to the EEOC) towards processing to Investigator Cotina Mills concerning said EEOC charge that included an Amendment submitted August 3, 2017, that resulted in a "Dismissal of Notice of Rights, and Notice of Suit Rights," on December 21, 2017, as perceived and inferred by Plaintiff on March 16, 2018, to submit(in case No.: 2:18cv145, IFP denied) about deliberate Title VII by race, and disability discrimination(s) by association with Plaintiff's son that had consequentially progressed to retaliation violation(s) of which has with malice and indifference perniciously engaged to erect Defendant's hostile work environment as incubated with subtle unwelcome

harassment and intimidation causing disparate treatments as exacted against
Plaintiff for Plaintiff seeking to rely on engaging in protected activity as presumed
or lead to believe that Plaintiff had employment rights pursuant to Defendant's
EEO Policy towards petitioning Defendant prior and during the 300 days prior
April 14, 2017, that included a fictitious disciplinary process, and as it appears to
have been a flagrant non-investigative state and federally unregulated unequal
employment importunity, as deviated from Defendant's administrative policy, that
became consummated with publicized verbal assaults thus birthing *defamation*,
and *Employer Fraud* while depriving plaintiff of known constitutional rights to
exercise the First, Fifth, and Fourteenth Amendments.

16). During December 24, 2017, and January 19, 2018, Gerod Stukes, Sr. was
litigating (by submitting on or around the above dates in the United States Court of
Appeals for the Fourth Circuit in the case(No. 17-2363) of Gerod Stukes v.
Paragon Systems Inc.(a corporation located within the City of Virginia Beach,
Virginia) was engaging in appeal from the United States District Court for the
Eastern District of Virginia, Norfolk Division as case number: 2:16-cv-00675-
RAJ-RJK , to allege Title VII, by race and sex discrimination violations and
retaliation as a direct result of defendant's hostile work environment incubated
with harassment and intimidation causing disparate treatment against plaintiff for
choosing to rely on engaging in protected activity as presumed or lead to believe

that plaintiff had employment rights towards petitioning defendant for plaintiff's

right to representation during the disciplinary, and investigative state and federally

regulated equal employment opportunity process(pursuant to EEO Policy), that

became contaminated with: Count 1 Assault and Battery, Count 2 False

Imprisonment, and Count 3 Employer Fraud of which has adversely impacted

formulations on subsequent post-employment processes as a result of depriving

plaintiff of the First, Fifth, and Fourteenth Amendment rights.

17).  On November 20, 2017, a lawsuit against the City of Virginia Beach(the

Holloway voting rights case) alleging the City's "at-large system of electing its

members for City Council impermissibly dilutes or minimizes minority voting

strength that deprives Plaintiff and others similarly-situated an equal opportunity to

elect candidates of their choice in violation of section 2 of the Voting Rights Act"

("VRA") 52 U.S.C. § 10301("Section 2") of City of Virginia Beach(initiating IFP,

11/20/17 ) of which also triggers an effect on education, employment, and housing

for minorities within Virginia Beach as a direct result of most of the time having,

an "all white" or a predominantly white City Council since the inception of the

City(Case #: 2:18cv00069 AWA-RJK) for most of its corporate existence that

prompted Holloway to subsequently file in the United States District Court for the

Eastern District of Virginia, Norfolk Division.

18).  It appears as subtitled above that "the collective judicial climate and

landscape" of the School Board as influenced by the City of Virginia Beach was not merely or randomly reaped by accident nor coincidence, but on the contrary; appears as a deliberate invidiously pernicious sustained campaign orchestrated for the express purpose to promulgate the agenda of "segregationists."

## INTRODUCTION

19). It appears as perceived from the Plaintiffs by association with both sons' disabilities, that the collective judicial climate as expressed above is indelibly, and consequentially connected together cumulatively(from Defendants' smoked filled backrooms) and had became the incubator, and the *beachhead* to accord and/or afford Defendants its alleged *temerity* to engage and feed from such brazen and unconscious(*as in not endowed with mental faculties*) acts as described above of which is also projected in this instant case because the Defendants' attitude, mindset, or perception as viewed by Defendants although perceived by Plaintiff as misguided, is that the Defendants are untouchable and above the law to epiphanize Defendants' selves as having delusional supreme power to use or deliberately misapply the Stukes' family as another gratifying experiment for the express purpose to generate the effect of forced migration or gentrification as initiated to implement further dilution of the minority voting base within the City of Virginia Beach, Virginia.

20). During, or relevant to all times for which alleged incidents of discrimination,

and retaliation included but not limited thereto; that had occurred within the Division of the School Board of the City of Virginia Beach, the Plaintiffs by association with both sons' disabilities along with the family were living at 1904 Stillwood Lane, Virginia Beach, Virginia 23456(prior address), until perceiving the need of being compelled to relocate to 1719 B Birch Trail Circle, Chesapeake Va. 23320.

21). Plaintiffs first son's case was handled by the law firm of Marcari, Russotto, Spencer, & Balaban, P.C. by attorney David J. Allmond, Esq. with Virginia State Bar No. 32649, the Plaintiffs seeks prosecution of each Defendant's having an appearance of working in concert to the detriment of B. S. and family by association in further violation of section 504 and both failures to enforce and protect FAPE within even the judicial process.

22). Now although Plaintiffs are not seeking for legal advice from the Defendants nor the Court, however; Plaintiffs are left with the unconsciously shocking question about; how does the School Board as a direct result of the actions of Mr. Board(math teacher) and Mr. Parkman(principal) get to be afforded the opportunity to escape civil prosecution , except it be from(in this case) joint efforts in concert to undermine prosecution?

## BASIS FOR THIS COMPLAINT

23a). It appears that the Defendants in concert were engaging in a generationally established trend or an "Accepted Business Practice" as clearly illustrated in the timeline of events that were promulgated against the Stukes' family of which was verified from "the collective judicial climate and landscape" of the School Board's influence individually, and/or on the behalf of the City of Virginia Beach.

23b). It appears as based on all facts aforementioned above the Defendants' failures in concert to protect, execute and enforce the preservation of FAPE as applied to Plaintiffs by association with both sons' disabilities are individually and and/or jointly liable as a direct result of the following:

24). Plaintiffs by association with both sons' disabilities were denied and deprived by Defendants' failures in concert to assist both sons as entitled to participate in FAPE in violations of ¶ 504 of the Rehabilitation Act of 1973, and Title II of ADA of 1990.

25). Plaintiffs by association with both sons' disabilities were denied and deprived by Defendants' failures in concert to assist both sons as entitled for enforcement of FAPE in violations of Titles 18 U.S.C. § 241, 42 U.S.C. §§ 1986, 1981, and 1983.

26). Plaintiffs by association with both sons' disabilities were denied and deprived by Defendants' failures in concert to protect and execute as entitled Plaintiffs First, Fifth, and Fourteenth Amendment rights with regards to the preservation of FAPE

as related to both sons' disabilities.

27a).  But instead as it appears, Defendants had also simultaneously progressed

with sustained retaliation, malice, and indifference to perniciously engage for

erection and subjection of Plaintiffs by association with both sons' disabilities to a

"hostile existence" that has stemmed from both sons *hostile learning environments*

incubated with precise flagrant unwelcomed intimidations and harassments causing

disparate treatments as directly exacted against both sons' ADHD/ADD disabilities

for seeking to rely on engaging in protected activity as all presumed or lead to

believe that Plaintiffs by association with B.S. 1 and B.S. 2("both sons") could

reasonably expect both sons to be able to apply without experiencing

discrimination and/or retaliation from Defendants, contrary to being able to enjoy

entitled educational rights for unfettered access to a "free appropriate public

education."

27b).  It also appears that Plaintiff by association with both sons' disabilities have

become victims of the same bullying, harassments, intimidations, retaliations,

disparate treatments, and verbal assaults like Plaintiffs' sons *as linked by birth to*

*the association* that has affected and effected the Stukes' family as indelibly

causally connected to the same Defendants' conduct.

## RELIEF SOUGHT

A).  Plaintiffs by association with both sons' disabilities pursuant to 42 U.S.C.

§ 1981, included but not limited thereto; 28 U.S.C. § 1331, requests the court to grant Relief as follows:

B). The above stated Defendants in concert through their agents, employees, subordinates, etc., be enjoined from maintaining current unlawful educational and judicial practices against Plaintiffs by association with both sons' disabilities in violations of IEP/§ 504 of the Rehabilitation Act of 1973, and Title II of ADA of 1990; Titles 18 U.S.C. § 241, 42 U.S.C. §§ 1986, 1981 and 1983; included but not limited thereto; during the so called "free appropriate public education" with respect, or in regards to the rules and regulations of the Office of Civil Rights.

C). Issue an injunction prohibiting denial of access of "free appropriate public education" as to Plaintiffs by association with both sons' disabilities to assist both sons and for Defendants in concert comply with said laws of the United States as stated in paragraph B above along with an order requiring Defendants to maintain the existing Resolution Agreement promoting a non-discrimination policy, that includes continued training(towards re-certification), and pay civil damages as listed below.  See Exhibit A (current Resolution Agreement).

D. In accord with the foregoing, Plaintiffs by association with both sons' disabilities, Gina and Gerod Stukes, Sr. claims damages against Defendants in concert as follows:

| | |
|---|---|
| Compensatory | $13,550 Dollars |
| travel expenses | $800 Dollars |
| mental anguish | $5,767,450 Dollars |
| expected loss | $3,000 Dollars |
| of lifetime investment | $5,000 Dollars |
| of parents' property | $2,200 Dollars |
| and loss of parents' stability(reputation) | $375,000 Dollars |
| protection, care | $105,000 Dollars |
| and residence | $18,200 Dollars |
| Punitive damages: | $ 10.355 Million Dollars |
| Attorney fees,42 U.S.C. § 1988(b): | 8,354,800  Dollars |
| **Total damages:** | **$25 Million Dollars** |

Wherefore; plaintiff moves this Court for judgment against Defendant for damages concerning issues asserted above in addition to plaintiff's costs expended in this action(pursuant to law).  Plaintiff request competent legal counsel be timely appointed in the interest of justice for fair representation of a proper case to the Court.

Respectfully Submitted,

November 30, 2018

_____

Gerod Stukes, Plaintiff
1904 Stillwood Lane
Virginia Beach, Virginia 23456
757-309-3674

_____

Gina Stukes, Plaintiff
757-955-3390