IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

**Gina and Gerod Stukes,**

**Plaintiffs(Pro se litigants),**

v.                                    CIVIL ACTION NO: <u>2:18-cv-00644</u>
                                      JURY TRIAL DEMANDED

**School Board of the City of Virginia Beach,
Marcari, Russotto, Spencer, & Balaban, P.C.
("the Law Firm") in it's Official Capacity as the
Defendants.**

## AMENDED COMPLAINT

**Comes now, the only two plaintiffs,** Gina and Gerod Stukes, as the parents by association with included but not limited to B.S. 1,' and B.S. 2(two minors)' disabilities, for cause against Defendants to assert pursuant to the Rules of this Court, the laws of the United States of which includes Titles 18 U.S.C. § 242, 42 U.S.C. §§ 1981, and 1983, and the laws of Virginia, in addition to case number 2:17-cv-00489-AWA-RJK, from the United States District Court for the Eastern District of Virginia, Norfolk Division, and case number 18-2042 from the United States Court of Appeals for the Fourth Circuit, that had culminated subsequent to the filing of OCR Complaint No. 11-18-1408, being submitted by the parents that was timely sent for processing to OCR by 04/16/18, prompting Defendant while having had ample opportunity to respond as with formulation of an OCR

Resolution Agreement on October 12, 2018, with regards to the "incidents [complained of] by parents that occurred on November 30th, December 4th, 6th, and 8th," during 2017, that all appears to have compelled activation for this current legal matter to allege violations of IEP/Section 504 of the Rehabilitation Act of 1973 and its implementing regulation at 34 C.F.R. Part 104, and Title II of the American Disabilities Act of 1990( Title II), with an implementing regulation of 28 C.F.R. Part 35, of which Defendants had also simultaneously progressed with Continuing violations of repeated and sustained retaliations, malice(s), and indifferences to perniciously engage for erections and subjections of Plaintiffs by association with included but not limited to both sons' disabilities to a "hostile existence" that has stemmed from included but not limited to both sons hostile learning environments as incubated with precise flagrant unwelcomed intimidations and harassments causing disparate treatments as directly exacted against Plaintiffs by association included but not limited to both sons' ADHD/ADD disabilities for seeking to rely on engaging in protected activities as all presumed or lead to believe that Plaintiffs by association with included but not limited to B.S. 1 and B.S. 2("both sons") could reasonably expect included but not limited to both sons to be able to apply without experiencing discrimination and/or retaliation from Defendants, contrary to being able to enjoy entitled educational rights for unfettered access to a "free appropriate public education."

1). Defendants' have engaged in Continuing violations for sustained deliberate failures to protect, execute, and enforce Defendants' policies, practices and procedures about IEP/Section 504, and Title II of ADA towards even Plaintiffs by association with included but not limited to both sons while appearing to petition the "School Board" first during litigation(case number 2:17-cv-00489, and case number 18-2042), and secondly, the same School Board regarding the same perceivable violations that had erupted on November 30, 2017, December 4, 2017, December 6, 2017, and December 8, 2017, while Plaintiffs were under the impression that the School Board was executing the FAPE to accommodate Plaintiffs' sons that also later resulted in a questionable or suspiciously inadequate investigative process, appearing as flagrantly induced to further subject Plaintiffs by association with included but not limited to both sons to a non-investigative state and federally unregulated unequal educational importunity, as all deviated from again Defendants' desire to deliberately engage in failed executions of administrative policies, that became consummated with publicized verbal assaults while depriving Plaintiffs by association with sons of known contractual and constitutional rights to exercise First, Fifth, and Fourteenth Amendment protected activities as entitled and further explained below and as guided by the following:

## THE FEDERAL QUESTION

2). Whether Plaintiffs' by association with included but not limited to both sons' disabilities were lawfully accorded and/or afforded from the Defendants with sufficient protections, executions, and enforcements for equal access to the services entitled or related to "Free Appropriate Public Education" under the Individualized Education Program, § 504 of the Rehabilitation Act of 1973, and Title II of the American Disabilities Act of 1990 in order for the Plaintiffs as associated with both sons' disabilities to avoid a hostile existence as derived from Defendants' conduct?

## JURISDICTION AND VENUE

3). Only these two Plaintiffs(Gina and Gerod Stukes), as associated with included but not limited to both sons disabilities, brings this action under the Individualized Education Program, Section 504 of the Rehabilitation Act of 1973, as amended at 29 U.S.C. § 794 (the "Rehabilitation Act"); American with Disabilities Act, Titles 42 U.S.C. §12131, et. seq.("ADA"); 18 U.S.C. § 242, 42 U.S.C. §§ 1981, & 1983.

4). This court has jurisdiction pursuant to the following statutes:

a). 28 U.S.C. §1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States;

b). 28 U.S.C. §1343 (3) and (4), which gives district courts jurisdiction over actions to secure civil rights extended by the United States government;

c). 28 U.S.C. §1367, which gives the district court supplemental jurisdiction over state law claims.

5). Venue is appropriate in this judicial district under 28 U.S.C. §1391 (b) because the events that gave rise to this Complaint occurred in this district.

## BACKGROUND

6). After December 6, 2017, the parents by association with both sons' disabilities were informed as initiated by B.S. 2 that the Defendant had subjected B.S. 2 to a hostile [learning] environment based on disability when the B.S. social studies teacher(Ms. Ward) said to B.S. 2 "is your brain so small that you can't remember instructions……..I bet a lot of the class has ADD"

7). B.S. 2 was enrolled as an seventh grader at Larkspur Middle School during the 2017-2018, school year while having an Individualized Education Program (IEP) and had a diagnosis of attention deficit disorder(ADD). On Thursday, December 7, 2017, B.S .2 reported to Larkspur Middle School an incident that occurred with B.S.2 social studies teacher on Wednesday December 6, 2017,and the School contacted the B.S. 2 parents to inform Gina and Gerod Stukes about the incident.

8). On Monday December 18, 2017, School Administrators, B.S. 2 teachers, case manager, and guidance counselor met with B.S. 2 and Gina Stukes to discuss the incident and other matters. On February 2, 2018, the IEP team met. Currently, B.S. 2 is enrolled in a different school division.

9). On August 15, 2018, the Plaintiffs by association with both sons' disabilities had learned from attorney David J. Allmond, Esq., with Va. State Bar No. 32649), at the office of Marcari, Russotto, Spencer, & Balaban, P.C., 501 Baylor Court, Chesapeake, VA 23320; that case number: 2:17-cv-00489-AWA-RJK, from the United States District Court for the Eastern District of Virginia, Norfolk Division, had granted Summary Judgment to the School Board on August 2, 2018, and that the Defendant(Law firm) had no intention whatsoever to pursue an appeal, nor made any further recommendations or even provided clarification as to why. At no time did the Law firm file an OCR Complaint or an Extension of Time to Obtain Counsel, nor for Appointment of Counsel on behalf B.S. 1 of prior to abandoning the case during the appealable period subsequent to August 2, 2018.

10). After October 12, 2018, Plaintiffs by association with both sons' disabilities had learned that the Defendant had entered into a Resolution Agreement concerning the youngest son's(B.S. 2) Complaint to OCR.

11). As a result of the District Court's decision on August 2, 2018, that left the parents on behalf of B.S. 1 without representation for appeal, the parents were forced out of the laws of necessity to submit the appeal to the Fourth Circuit(case number 18-2042 ), that consummated for affirmation(November 15, 2018) of the District Court of which has caused Plaintiffs by association with the older son and now both sons' disabilities to be left boxed in a hostile judicial environment that

has stemmed from and remains in perpetuation of section 504 and Title II of ADA violations birthed from a breach of Defendants' implementation of "FAPE."

12). Both Defendants either knew or should have known all incidents in question regarding this instant case are sufficiently severe and pervasive as created and sustained from the same "School Board's" hostile [learning] environments of which is a form of discrimination prohibited by section 504 and Title II of ADA.

13). But instead, Plaintiffs by association with included but not limited to both sons' disabilities were again caused to be subjected to denials as a direct result of Defendants' indifference that appears also coupled with harassment, intimidation, and retaliation against both parents because the effect of Defendants' flagrant misconduct appears to be aimed against both parents by association with B.S.1, and B.S.2 while targeting included but not limited to both sons as pawns on a Chess board by thinking to transcend with irrational authority of empowerment Defendants' actions again became sufficiently severe or pervasive as to interfere with or limit Plaintiffs' ability to assist B.S.1 with the lawsuit and B.S. 2 with the investigation in order to discourage the parents' participation in and/or parents by association as entitled to assist both sons to benefit from the Defendant's programs, activities, or services as related to FAPE in further violation of § IEP/504, and Title II of ADA protections; and/or had deliberately sought to obstruct or diminish Plaintiffs' abilities as associated with both sons' disabilities to protect, assist, and

to acquire access of FAPE as entitled yet misapplied by Defendants legislatively, executively and judicially thus perpetuating Plaintiffs by association with included but not limited to both sons' disabilities to a sustained hostile existence that also appears to have harmed the parents' the integrity of the family name, reputation, and parental interests as lawfully related to all sons.

### The Collective Judicial Climate and Landscape of the School Board as influenced by the City of Virginia Beach.

14). From the dismissed case that was highly publicized statewide, nationally, and internationally Court Order for case(No.: 2:17cv489) as it appears as a direct result of a deliberate failure to enforce as affirmed with poor representation(attorney David J. Allmond, Esq. Va. State Bar No. 32649), of Marcari, Russotto, Spencer, & Balaban, P.C. , 501 Baylor Court, Chesapeake, VA 23320; 757-963-2800 (phone), and 757-963-0750 (Facsimile) for the first son, B.S. 1, who had known disability and 504 Plan(April 22, 2016). On September 16, 2016, the Math teacher(Mr. Board) was not limited to just writing the word "FOCUS" on Bryan's forehead with a dry erase marker, and taking a photograph so Plaintiff could see what it looked like. This had caused the School Board administrators to place Mr. Board on administrative leave on September 28, 2016, and later being found guilty of simple Assault and Battery on or around January 24, 2017, of which was published in "The Virginian Pilot," followed by the following:

14a). The parents' entitled right to protect each son as even required by law was strained, diminished, and even obstructed, for example; on February 28, 2018, the Office of Civil Rights(OCR) of the U.S. Department of Education had received the parents' intent to file another separate and distinct charge(based on race, disability, and retaliation about B.S. 1) as explained during November to December 15, 2017, the Division retaliated against the Student because the Complainant(Gerod Stukes) filed OCR Complaint No. 1117-1144 when the School cafeteria staff posted the student's picture at the cashier registers and behind the serving lines.

14b). On May 23, 2018, the Office of Civil Rights(OCR) of the U.S. Department of Education had acknowledged receipt of the parents intent to file another separate and distinct OCR charge(Complaint No. 1118-1341, based on the disabilities of B.S. 1, and B.S.3) as explained during May 15, 2018, when B.S.3 was sent to school to sign out and pick up B.S.1 as commanded by the parents but instead the same Mr. Nelson(in case No.: 2:18cv145) refused for over a half hour to allow the sign out when this was already processed and cleared within the school's computer to do leaving again the effect of retaliation based on disability.

15). EEOC charge(No. 437-2017-6505) of which was timely submitted for processing to the EEOC by 04/14/17, and after 04/14/17, for the time it took for Defendant to respond to the EEOC's Request for Information and then up to ten days for Plaintiff's review(of RFI) to respond back in Writing(to the EEOC)

towards processing to Investigator Cotina Mills concerning said EEOC charge that included an Amendment submitted August 3, 2017, that resulted in a "Dismissal of Notice of Rights, and Notice of Suit Rights," on December 21, 2017, as perceived and inferred by Plaintiff on March 16, 2018, to submit(in case No.: 2:18cv145, IFP denied) about deliberate Title VII by race, and disability discrimination(s) by association with Plaintiff's son that had consequentially progressed to retaliation violation(s) of which has with malice and indifference perniciously engaged to erect Defendant's hostile work environment as incubated with subtle unwelcome harassment and intimidation causing disparate treatments as exacted against Plaintiff for Plaintiff seeking to rely on engaging in protected activity as presumed or lead to believe that Plaintiff had employment rights pursuant to Defendant's EEO Policy towards petitioning Defendant prior and during the 300 days prior April 14, 2017, that included a fictitious disciplinary process, and as it appears to have been a flagrant non-investigative state and federally unregulated unequal employment importunity, as deviated from Defendant's administrative policy, that became consummated with publicized verbal assaults thus birthing defamation, and Employer Fraud while depriving plaintiff of known constitutional rights to exercise the First, Fifth, and Fourteenth Amendments.

16). During December 24, 2017, and January 19, 2018, Gerod Stukes, was litigating (by submitting on or around the above dates in the United States Court of

Appeals for the Fourth Circuit in the case(No. 17-2363) of Gerod Stukes v. Paragon Systems Inc.(a corporation located within the City of Virginia Beach, Virginia) was engaging in appeal from the United States District Court for the Eastern District of Virginia, Norfolk Division as case number: 2:16-cv-00675-RAJ-RJK , to allege Title VII, by race and sex discrimination violations and retaliation as a direct result of defendant's hostile work environment incubated with harassment and intimidation causing disparate treatment against plaintiff for choosing to rely on engaging in protected activity as presumed or lead to believe that plaintiff had employment rights towards petitioning Defendant for plaintiff's right to representation during the disciplinary, and investigative state and federally regulated equal employment opportunity process(pursuant to EEO Policy), that became contaminated with: Count 1 Assault and Battery, Count 2 False Imprisonment, and Count 3 Employer Fraud of which has adversely impacted formulations on subsequent post-employment processes as a result of depriving plaintiff of the First, Fifth, and Fourteenth Amendment rights.

17). On November 20, 2017, a lawsuit against the City of Virginia Beach(the Holloway voting rights case) alleging the City's "at-large system of electing its members for City Council impermissibly dilutes or minimizes minority voting strength that deprives Plaintiff and others similarly-situated an equal opportunity to elect candidates of their choice in violation of section 2 of the Voting Rights Act"

("VRA") 52 U.S.C. § 10301("Section 2") of City of Virginia Beach(initiating IFP, 11/20/17 ) of which also triggers an effect on education, employment, and housing for minorities within Virginia Beach as a direct result of most of the time having, an "all white" or a predominantly white City Council since the inception of the City(Case #: 2:18cv00069 AWA-RJK) for most of its corporate existence that prompted Holloway to subsequently file in the United States District Court for the Eastern District of Virginia, Norfolk Division.

18). It appears as subtitled above that "the collective judicial climate and landscape" of the School Board as influenced by the City of Virginia Beach was not merely or randomly reaped by accident nor coincidence, but on the contrary; appears as a deliberate invidiously pernicious sustained campaign orchestrated for the express purpose to promulgate the agenda of "segregationists."

## INTRODUCTION

19). It appears as perceived from the Plaintiffs by association with included but not limited to both sons' disabilities, that the collective judicial climate as expressed above is indelibly, and consequentially connected together cumulatively(from Defendants' smoked filled backrooms) and had became the incubator, and the beachhead to accord and/or afford Defendants its alleged temerity to engage and feed from such brazen and unconscious(as in not endowed with mental faculties) acts as described above of which is also projected in this

instant case because the Defendants' attitude, mindset, or perception as viewed by Defendants although perceived by Plaintiff as misguided, is that the Defendants are untouchable and above the law to epiphanize Defendants' selves as having delusional supreme power to use or deliberately misapply the Stukes' family as another gratifying experiment for the express purpose to generate the effect of forced migration or gentrification as initiated to implement further dilution of the minority voting base within the City of Virginia Beach, Virginia.

20). During, or relevant to all times for which alleged incidents of discrimination, and retaliation included but not limited thereto; that had occurred within the Division of the School Board of the City of Virginia Beach, the Plaintiffs by association with included but not limited to both sons' disabilities along with the family were living at 1904 Stillwood Lane, Virginia Beach, Virginia 23456(prior address), until the parents had perceived the need of feeling compelled to relocate to 1719 B Birch Trail Circle, Chesapeake Va. 23320.

21). Plaintiffs first son's case was handled by the law firm of Marcari, Russotto, Spencer, & Balaban, P.C. by Attorney David J. Allmond, Esq. with Virginia State Bar No. 32649, the Plaintiffs seeks prosecution of each Defendant's having an appearance of working in concert to the detriment of the parents' intent/interests to protect included but not limited to both sons association in further violations of section 504 and Title II of ADA, due to failures to enforce, execute, and protect

FAPE within even the judicial process.

22). Now although Plaintiffs are not seeking legal advice from the Defendants nor the Court, however; Plaintiffs are left with the unconsciously shocking question about; how does the School Board as a direct result of the actions of Mr. Board(math teacher) and Mr. Parkman(principal) get to be afforded the opportunity to escape civil prosecution , except it be from(in this case) joint efforts in concert to undermine prosecution, because this issue alone appears as indelibly suspect.

## BASIS FOR THIS COMPLAINT

23a). It appears that the Defendants in concert were engaging in a generationally established trend or an "Accepted Business Practice" as clearly illustrated in the timeline of events that were promulgated against the parents of the Stukes' family of which was verified from "the collective judicial climate and landscape" of the School Board's influence within the City of Virginia Beach.

23b). It appears as based on all facts aforementioned above the Defendants' failures in concert to protect, execute and enforce the preservation of FAPE as applied to Plaintiffs by association with included but not limited to both sons' disabilities are separately and and/or jointly liable in concert as a direct result of the following:

24). Plaintiffs by association with included but not limited to both sons' disabilities were denied and deprived by Defendants' failures in concert to assist

both sons as entitled, directed, and consented by parents to participate in FAPE in violations of ¶ 504 of the Rehabilitation Act of 1973, and Title II of ADA of 1990.

25). Plaintiffs by association with included but not limited to both sons' disabilities were denied and deprived by Defendants' failures in concert to assist both sons as consented, directed, and entitled by parents for enforcement of FAPE in violations of Titles 18 U.S.C. § 242, 42 U.S.C. §§ 1981, and 1983.

26). Plaintiffs by association with included but not limited to both sons' disabilities were denied and deprived by Defendants' failures in concert to protect and execute as entitled Plaintiffs First, Fifth, and Fourteenth Amendment rights with regards to the preservation of FAPE as related to both sons' disabilities.

27a). But instead as it appears, Defendants had also simultaneously progressed with sustained retaliation, malice, and indifference to perniciously engage for erection and subjection of Plaintiffs by association with included but not limited to both sons' disabilities to a "hostile existence" that has stemmed from both sons hostile learning environments incubated with precise flagrant unwelcomed intimidations and harassments causing disparate treatments as directly exacted against both sons' ADHD/ADD disabilities for parents seeking to rely on existing IEP/504/ADA laws as all presumed or lead to believe that Plaintiffs by association with included but not limited to B.S. 1 and B.S. 2("both sons") could reasonably expect both sons to participate in without experiencing discrimination and/or

retaliation from Defendants, contrary to being able to enjoy entitled educational rights for unfettered access to a "free appropriate public education."

27b). It also appears that Plaintiff by association with included but not limited to both sons' disabilities have become victims of the same bullying, harassments, intimidations, retaliations, disparate treatments, and verbal assaults like Plaintiffs' sons as linked by birth to the association that has affected and effected the parents' existence as indelibly and causally connected to the same Defendants' conduct.

28). "The Law Firm(Defendant's)" ineffective assistance of counsel in case No. 2:17-cv-00489-AWA-RJK, did indeed sustain the flagrant continued effect of compromising the intent, and diminishing the capacity of the parents' interests, with regards to restoration for enforcement of the Individualized Education Program, Section 504 of the Rehabilitation Act of 1973, as amended at 29 U.S.C. § 794 (the "Rehabilitation Act"); American with Disabilities Act included but not limited to retaliation by parental association with all sons concerning acquiring access to a "free appropriate public education," since commencement of the Law Firm's representation.

## RELIEF SOUGHT

A). Plaintiffs by association with both sons' disabilities pursuant to 42 U.S.C. § 1981, included but not limited thereto; 28 U.S.C. § 1331, requests the court to grant Relief as follows:

B). The above stated Defendants in concert through their agents, employees, subordinates, etc., be enjoined from maintaining current unlawful educational and judicial practices against Plaintiffs by association with both sons' disabilities in violations of IEP/§ 504 of the Rehabilitation Act of 1973, and Title II of ADA of 1990; Titles 18 U.S.C. § 242, 42 U.S.C. §§ 1981 and 1983; included but not limited thereto; during the so called "free appropriate public education" with respect, or in regards to the rules and regulations of the Office of Civil Rights.

C). Issue an injunction prohibiting denial of access of "free appropriate public education" as to Plaintiffs by association with included but not limited to both sons' disabilities to assist both sons and for Defendants in concert comply with said laws of the United States as stated in paragraph B above along with an order requiring Defendants to maintain the existing Resolution Agreement promoting a non-discrimination policy, that includes continued training(towards re-certification), and pay civil damages as listed below. See Exhibit A (current Resolution Agreement).

D. In accord with the foregoing, Plaintiffs by association with included but not limited to both sons' disabilities, Gina and Gerod Stukes, claims damages against Defendants in concert as follows:

| | |
|---|---:|
| Compensatory | $13,550 Dollars |
| travel expenses | $800 Dollars |

| | |
|---|---:|
| mental anguish | $5,767,450 Dollars |
| expected loss | $3,000 Dollars |
| of lifetime investment | $5,000 Dollars |
| of parents' property | $2,200 Dollars |
| and loss of parents' stability(reputation) | $375,000 Dollars |
| protection, care | $105,000 Dollars |
| and residence | $18,200 Dollars |
| Punitive damages: | $ 10.355 Million Dollars |
| Attorney fees, 42 U.S.C. § 1988(b): | 8,354,800 Dollars |
| Total damages: | $25 Million Dollars |

Wherefore; plaintiff moves this Court for judgment against Defendant for damages concerning issues asserted above in addition to plaintiff's costs expended in this action(pursuant to law). Plaintiff request competent legal counsel be timely appointed in the interest of justice for fair representation of a proper case to the Court.

Respectfully Submitted,

*/s/ Gerod Stukes/*
Gerod Stukes, Plaintiff
1719 B Birch Trail Circle
Chesapeake Va. 23320
757-309-3674

February 13, 2019

*/s/ Gina Stukes/*
Gina Stukes, Plaintiff
757-955-3390

## CERTIFICATE OF SERVICE

I certify that on or before the 13th day February, 2019, a true copy of the foregoing was sent, prepaid via the United States Postal System, First class mail and is being delivered to Defendants at:

Richard H. Mathews, Esq.
Virginia State Bar No. 16318
**Pender & Coward, P.C.**
222 Central Park Avenue, Suite 400
Virginia Beach, VA 23462-3026
(757)-490-6256    Telephone
(757)-497-1914    Facsimile
Email: rmatthew@pendercoward.com
*Counsel for the School Board of
the City of Virginia Beach, Virginia*

Edward W. Cameron
VSB No. 29448
Patrick J. McDonald
VSB No. 80678
CAMERON MCEVOY PLLC
4100 Monument Corner Drive, Ste. 420
Fairfax, Virginia 22030
(703) 273-8898
(703) 273-8897 Facsimile
ecameron@cameronmcevoy.com
pmcdonald@cameronmcevoy.com
Counsel for Defendant Marcari,
Russotto, Spencer &Balaban, P.C.

Anne C. Lahren, Esq.
Virginia State Bar No. 73125
Pender & Coward, P.C.
222 Central Park Avenue, Suite 400
Virginia Beach, VA 23462-3026
(757)-490-6293    Telephone
(757)-497-1914    Facsimile
Email: alahren@pendercoward.com
*Counsel for the School Board of
the City of Virginia Beach, Virginia*

Respectfully Submitted,

_____
Gerod Stukes, Plaintiff
1719 B Birch Trail Circle
Chesapeake Va. 23320
757-309-3674

February 13, 2019

_____
Gina Stukes, Plaintiff
757-955-3390